USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/24/07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
RUSSELL ALTMAN,

               Plaintiff,

    - against -

MOTION WATER SPORTS, INC.,

               Defendant.
----------------------------------------x

06 Civ. 6216 (DFE)

This is an ECF case

MEMORANDUM AND ORDER

DOUGLAS F. EATON, United States Magistrate Judge.

    This is a diversity action for personal injuries suffered on Candlewood Lake in Connecticut in July 2004. Plaintiff alleges that his water ski had a design defect. On May 16, 2007, I heard oral argument on the motion by the defendant ("MWS") to transfer this case to the District of Connecticut.

    For the reasons set forth below, I am prepared to order that this case be transferred to the District of Connecticut, with my strong recommendation that the case be assigned to that District's Bridgeport courthouse. After the oral argument, I consulted with Magistrate Judge William Garfinkel. He advised that the District of Connecticut normally assigns cases at random to Bridgeport or New Haven or Hartford, but that reassignments are sometimes made for the convenience of parties or witnesses. He said that if I were to recommend a particular courthouse, then the Clerk in Connecticut would honor such a recommendation.

    The parties agree that, in deciding the transfer motion, I must weigh a number of factors, including: "(1) the plaintiff's choice of forum, (2) the locus of the operative facts, (3) the convenience and relative means of the parties, (4) the convenience of the witnesses, (5) the availability of process to compel the attendance of witnesses, (6) the location of physical evidence, including documents, (7) the relative familiarity of the courts with the applicable law, and (8) the interests of justice, including the interest of trial efficiency." *Smart v. Goord*, 21 F.Supp.2d 309, 315 (S.D.N.Y. 1998) (Francis, M.J.)

    "[W]hen the operative events occurred elsewhere, the plaintiff's choice of forum is given less weight." *Ibid.* In the case at bar, "the locus of the operative facts" was Connecticut. Plaintiff was born in February 1985, and lived with his parents

in New Canaan, Connecticut until sometime after July 21, 2004, the date when he was injured on Candlewood Lake while using a slalom water ski. It seems to be undisputed that he had purchased the water ski at a marina on Candlewood Lake, some 75 miles from Manhattan. The Complaint (at ¶11) alleges:

> In or about 2003, plaintiff purchased an O'Brien slalom water ski ... manufactured, assembled, designed, marketed and otherwise placed into the stream of commerce by the defendant ....

The Answer by the defendant responds:

> 8. ... MWS did not exist at all times mentioned in the Complaint and ... MWS did not manufacture, assemble, design, market or otherwise place the Water Ski into the stream of commerce.

\*   \*   \*

SEVENTH AFFIRMATIVE DEFENSE

> 24. MWS entered into an Asset Purchase Agreement dated March 28, 2003 with Earth and Ocean Sports, Inc. ("EOS").
>
> 25. The Water Ski was manufactured, marketed and distributed by EOS before the effective date of the Asset Purchase Agreement.
>
> 26. MWS is not responsible or legally liable for injuries or claims asserted with respect to products or alleged defects in products manufactured, marketed and distributed by EOS before the effective date of the Asset Purchase Agreement.

Accordingly, this case presents a threshold question under Connecticut law: If MWS acquired the assets but not the liabilities of EOS, and if MWS continued to sell the same product line, would Connecticut law impose liability on MWS for a later injury caused by a design defect committed by EOS? The parties agree that Connecticut law has not yet provided a definitive answer to that question. I find that it would be preferable to have this question decided by a judge who is familiar with Connecticut law and who is more likely to foresee the answer that

might be given in the future by the high court of Connecticut. First, this would be preferable for the proper resolution of the case at bar. Second, the decision would create a precedent that would have some effect on other persons involved in similar product liability disputes arising in Connecticut. Accordingly, I find that the seventh factor (the relative familiarity of the courts with the applicable law) weighs in favor of transfer to the District of Connecticut.

If plaintiff prevails on that threshold legal question of successor liability, then other questions will have to be answered under Connecticut law: Did plaintiff use the water ski in violation of (a) any warnings given to him by the salesperson at the marina, or (b) local and state rules regarding boating and waterskiing practices? Defendant's investigator has identified marina employees, state and local officials, and lake-shore residents as potential witnesses concerning these questions. In my view, these questions will turn less on disputed issues of law and more on issues of fact for a jury to decide. I find that it would be preferable to have Connecticut jurors decide those issues, particularly issues regarding boating and waterskiing practices on Candlewood Lake, which may turn out to be intensely local issues. Accordingly, I find that the eighth factor (the interests of justice) weighs in favor of transfer.

The courthouses in Manhattan, Bridgeport and New Haven are each located within 100 miles of the residences of all the witnesses; pursuant to Rule 45, F.R.Civ.P., each courthouse could issue a subpoena for testimony or documents. Therefore, the fifth and sixth factors do not favor or disfavor a transfer.

I turn now to the third factor (the convenience and relative means of the parties) and the fourth factor (the convenience of the witnesses). Plaintiff's counsel has agreed to travel to Connecticut to take the depositions of Connecticut residents, and defendant's counsel has agreed to travel to New York to take the depositions of New York residents. Accordingly, I am focusing on the possibility of a trial. In particular, I am trying to identify which witnesses are so important that a party would need to present their testimony in person rather than by deposition.

The accident occurred in July 2004; plaintiff (then aged 19) was using the water ski as he was being towed by a boat operated by his brother (then aged 16). Plaintiff was initially treated at Danbury Hospital. However, he had surgery in Manhattan on the day after the accident, and again several months later. His sole treating surgeon has been Dr. Jonathan T. Deland, a foot and ankle specialist whose office is exclusively in Manhattan.

-3-

Plaintiff later moved from his parents' Connecticut house to an apartment in Manhattan. He retained a Manhattan law firm and filed suit in our Court in August 2006. More recently, his brother moved from Connecticut to Yonkers, NY. Also in Yonkers are two friends who witnessed the accident. Another friend who witnessed the accident resides in Connecticut.

Plaintiff stresses that, if the case goes to trial, Connecticut will be a less convenient venue for (a) Dr. Deland and (b) plaintiff's counsel.

### a. Inconvenience for Dr. Deland

I previously mentioned that defense counsel has agreed that, if he takes Dr. Deland's deposition, he will take it in Manhattan. In addition, defendant has offered to allow plaintiff to take Dr. Deland's deposition (presumably at the same session, videotaped if desired) and to use it at trial on plaintiff's case in chief. Plaintiff counters by asserting that it is important to have Dr. Deland as a live witness at trial. I will assume that plaintiff is correct that "Dr. Deland would be able to maintain a half day of office hours if he were to [give trial testimony] in New York City," whereas "he would be required to cancel a full day of office hours" if his trial testimony were in Connecticut. (Pl. Mem. p. 9.) Nevertheless, trial testimony would be very inconvenient for Dr. Deland even if the trial were in Manhattan. I think plaintiff has no genuine need to have Dr. Deland testify live rather than by deposition. The sensible solution is for plaintiff to accept defendant's offer that Dr. Deland's deposition be videotaped and be usable at trial on plaintiff's case in chief.

As a treating physician, Dr. Deland will not be required to submit the full report required by Rule 26(a)(2)(B), but he must be identified by plaintiff pursuant to Rule 26(a)(2)(A). In the circumstances of this case, fairness requires that plaintiff's identification ought to state the general subject of the witness's opinions, and in particular whether the witness is going to opine (a) that the ski's design was a cause of the injury, and/or (b) that the injury will be permanent to any significant degree. If Dr. Deland's is not going to proffer either of those two opinions, that it may be that defendant (after reviewing the medical records) will choose not to depose him.

Plaintiff's memorandum, at pages 9-10, raises the specter that Dr. Deland, as a treating physician, might not be entitled to any fee for time spent giving deposition and/or trial

-4-

testimony (other than the $40 plus mileage provided by 28 U.S.C. §1821). Plaintiff cites Magistrate Judge Pitman's holding to that effect in *Zanowic v. Ashcroft,* 2002 WL 826878 (S.D.N.Y. Apr. 30, 2002). Judge Pitman acknowledged that judges in our Circuit and around the country have been split on this issue. Plaintiff has stressed the issue of Dr. Deland's inconvenience. Therefore, I think plaintiff is not advocating a *Zanowic* result but instead is expressing a fear that defendant may advocate such a result. Defendant's reply memorandum did not address *Zanowic,* and I do not recall that defendant addressed it during oral argument. But I feel obliged to address *Zanowic* because I find that Dr. Deland's inconvenience is an important factor in reaching a fair decision on defendant's transfer motion.

In general, I am more persuaded by the reasoning in an opinion that disagreed with *Zanowic,* namely *Lamere v. New York State Office for the Aging,* 223 F.R.D. 85 (N.D.N.Y. 2004) (Treece, M.J.). Rule 26(a)(2)(A) says:

> ... [A] party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence [relating to "Testimony by Experts" regardless of whether they were specially retained for litigation].

Rule 26(b)(4)(A) says:

> A party may depose any person who has been identified as an expert whose opinions may be presented at trial. ...

Rule 26(b)(4)(C) says:

> Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under this subdivision [subd. 4]; ...

I agree with Magistrate Judge Treece when he writes:

> ... Reading all of these Rules together, they require payment of a reasonable fee to all experts who are disclosed under Rule 26(a)(2)(A) and deposed under Rule 26(b)(4) - - irrespective of whether they are retained experts, and irrespective of whether they are required to submit a report

> under Rule 26(a)(2)(B). Stated another way, which should not escape us, it is not the reporting requirement that generates a reasonable fee be paid but, rather, the deposition process itself, which blankets all experts.

Lamere, 223 F.R.D. at 93 (internal quotation marks and citation omitted).

As a condition of transfer to the District of Connecticut, I hereby direct that defendant must agree to pay Dr. Deland a reasonable fee (and no more than Dr. Deland would charge to plaintiff) for time spent in responding to any questions from defendant in any deposition. Plaintiff says the fee for this surgeon is "approximately $500 per hour." (Pl. Mem. p. 10.) I see no need for me to issue an advance ruling on what exact rate would be reasonable. Nor do I rule on any claim for travel time or preparation time. Any such questions can be decided by the District of Connecticut. In this connection, I note a very recent opinion by a special master in that District, Packer v. SN Servicing Corp., 2007 WL 1732582 (D.Conn. June 11, 2007).

### b. Inconvenience for plaintiff's counsel

If the case goes to trial, Bridgeport would be more inconvenient than Manhattan for plaintiff's counsel, and would require plaintiff to reimburse him for hotel expense. Some case law says that counsel's inconvenience is not a legitimate factor to consider. Vaughn v. American Basketball Association, 419 F.Supp. 1274, 1277 (S.D.N.Y. 1976) (Lasker, J.); Kolko v. Holiday Inns, Inc., 672 F.Supp. 713, 715 (S.D.N.Y. 1987) (Kram, J.). But I have given it some weight because I think it is part of the first factor (plaintiff's choice of forum). As for cost, the reimbursement for a few nights in a Bridgeport hotel does not amount to a financial hardship for plaintiff.

### c. Inconvenience for non-party witnesses.

I am unconvinced that a jury would prefer that Dr. Deland's testimony be live, as opposed to a videotape. On the other hand, I find it more likely that a jury would prefer live testimony from the witnesses who have knowledge about whether plaintiff's use of the water ski did or did not violate (a) any warnings given to him by the salesperson at the marina, or (b) local and state rules regarding boating and waterskiing practices on Candlewood Lake. On those issues, plaintiff plans to present live testimony from himself, his brother, and friends; they would not be inconvenienced by a trial in Bridgeport. To counter those

-6-

witnesses, defendant plans to present testimony from marina employees, state and local officials, and lake-shore residents. If the case goes to trial, it seems likely that both defendant and the jury would prefer to have live testimony from at least some of those defense witnesses. Those defense witnesses are truly non-parties, and Manhattan would be much more inconvenient than Bridgeport for them. Inconvenience to them is paramount in my analysis of inconvenience to witnesses.

## CONCLUSION

For the reasons stated above, I hereby direct defendant to send me and plaintiff, by July 30, 2007, a written statement that defendant agrees to pay Dr. Deland a reasonable fee (and no more than Dr. Deland would charge to plaintiff) for time spent in responding to any questions from defendant in any deposition in this case. Upon receiving said statement, I will enter an order, pursuant to 28 U.S.C. §1404, directing the Clerk to transfer this civil action to the District of Connecticut, with my strong recommendation that the case be assigned to that District's Bridgeport courthouse. During the interim, both sides are free to serve and file a proposed form of order if they wish.

*Douglas F. Eaton*

DOUGLAS F. EATON
United States Magistrate Judge
500 Pearl Street, Room 1360
New York, New York 10007
Telephone: (212) 805-6175
Fax: (212) 805-6181

Dated:   New York, New York
         July 23, 2007

Copies of this Memorandum and Order are being sent by fax and by electronic filing to:

Attilio A. D'Oro, Esq. at 212-683-5555 fax
Bruce H. Raymond, Esq. at 860-633-0438 fax
Carol A. Schrager, Esq. at 212-213-0657 fax